IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  3:22-cv-85-CWB |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Joshua Rogers ("Plaintiff") filed this action against CSX Transportation, Inc. ("CSXT") to assert claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*. ("Title VII") and 42 U.S.C. § 1981. (Doc. 1).  The core allegation is that CSXT unlawfully terminated Plaintiff's employment on the basis of his Caucasian race.  (*See* Doc. 1).  For the reasons set forth below, the court finds that summary judgment is due to be entered in favor of CSXT on all claims.[1]

**I.    Factual Background**

CSXT is a railroad transportation company based out of Jacksonville, Florida.  (Doc. 1 at p. 2, ¶ 5; Doc. 21-5 at p. 1, ¶ 3).  Plaintiff, who is a Caucasian male, began working for CSXT in November 2005 as a conductor.  (Doc. 1 at p. 2, ¶ 6; Doc. 21-5 at p. 2, ¶ 5; Doc. 24-23 at pp. 4-5). The formal CSXT job description for "Freight Conductor" provides that "[a] conductor's primary

---

[1] Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, all parties have consented to the exercise of full civil jurisdiction by a United States Magistrate Judge. (Docs. 14 & 15).  Because the claims at issue arise under the laws of the United States, subject matter jurisdiction is conferred by 28 U.S.C. § 1331.  The parties have not contested personal jurisdiction or venue, and the record sufficiently supports both.  *See* 28 U.S.C. § 1391; Fed. R. Civ. P. 4(k)(1)(A).

1

responsibility is to safely coordinate train crews on a freight train, place rail cars to facilitate loading and unloading, and makeup/breakdown trains in a rail yard, customer facility or similar locations." (Doc. 24-1 at p. 1). Among the specific "Activities and Responsibilities" enumerated for CSXT conductors is to "[e]nsure compliance with all train orders, signals, railroad and safety rules and Federal Railroad Administration (FRA) regulations" and to "[m]aintain awareness of surrounding area … to ensure rail safety." (*Id.*).

Conductors work in conjunction with locomotive engineers to facilitate the safe operation of trains for CSXT. (Doc. 21-5 at p. 2, ¶ 6). Although many of the listed "Activities and Responsibilities" for locomotive engineers mirror those of conductors, the formal job description for "Locomotive Engineer" summarizes the position as follows: "Operate railway locomotives to transport freight or switch, couple, and uncouple cars for loading and unloading." (Doc. 24-2 at p. 2). In more common parlance, a locomotive engineer drives the train while the conductor provides guidance and acts as the "eyes and ears" of the train. (Doc. 21-5 at p. 2, ¶¶ 5-6; Doc. 24-12 at p. 25).[2]

On April 8, 2021, Plaintiff was working as the conductor on a train near Lagrange, Georgia. (Doc. 1 at p. 2, ¶ 8; Doc. 24-23 at p. 11). The engineer assigned to the train was Jeffrey Green, who is an African-American male. (Doc. 1 at p. 2, ¶ 8; Doc. 21-5 at p. 4, ¶ 10; Doc. 24-23 at p. 11). As the train was being moved, a derailment occurred that involved two cars at the train's rear. (Doc. 1 at p. 3, ¶ 9; Doc. 21-5 at p. 5, ¶ 11; Doc. 24-23 at p. 12). It appears from the record that Plaintiff and Green were of the erroneous understanding that the train's length was 9,400 feet when its actual length was over 10,000 feet. (Doc. 1 at p. 2, ¶ 8; Doc. 24-3 at pp. 1-2; Doc. 24-12 at pp. 18-19). It further appears from the record that the extra length caused the train

---

[2] Service as a conductor precedes eligibility to serve as locomotive engineer. (Doc. 24-2 at p. 2).

to proceed beyond a stop signal and switch. (Doc. 1 at pp. 2-3, ¶ 9; Doc. 21-5 at p. 5, ¶ 11; Doc. 24-23 at p. 12).[3]

At all such times, the train was being operated in "reverse"—meaning the locomotive operated by Green was <u>pushing</u> the train cars in their direction of travel. (Doc. 21-5 at p. 5, ¶ 10). CSXT refers to that type of operation as a "shove." (Doc. 24-23 at p. 11). Because the engineer is often unable to see the far end of the train cars while operating in reverse, it is the conductor's responsibility to "protect the shove." (Doc. 24-23 at p. 11). Responsibility for so "protecting the shove" is detailed in CSXT's Operating Rule 406.3:

> Ensure all cars in a cut are coupled prior to shoving. **The employee directing the movement must know the track is clear by providing point protection or being in a position to make a positive visual determination**. Track is clear means: 1. The portion of track to be used is clear and there are no conflicting movements, 2. All intervening switches and derails are properly lined for the intended movement, 3. There are no intervening highway-rail or pedestrian crossings at grade or such crossings have been properly protected by a qualified employee or made inaccessible, and 4. There is sufficient room in the track to hold the equipment being shoved.

(Doc. 24-4 at p. 6, n.6) (emphasis added). A conductor may carry out the responsibility by either riding on the leading edge of the train cars or by watching from a location with a comparable vantage point, *i.e.*, the conductor must be in position to accurately communicate visual observations to the engineer regarding the track ahead. (Doc. 21-5 at p. 5, ¶ 10; Doc. 24-4 at p. 5; Doc. 24-23 at p. 11). Failure to "protect the shove" can pose significant danger to persons and property. (Doc. 21-5 at p. 4, ¶ 9; Doc. 24-23 at p. 11).[4]

---

[3] The derailment occurred as Green attempted to pull the train back in the opposite direction. (Doc. 24-12 at p. 10; Doc. 24-23 at p. 12).

[4] CSXT's Operating Rule 504.21 prohibits any movement of trains in violation of stop signals. (Doc. 21-5 at p. 4, ¶ 9; Doc. 24-12 at p. 13). Violation of Operating Rule 504.21 is classified as a "major offense." (*Id.* at ¶ 10). Under CSXT's Individual Development and Personal Accountability Policy for All Craft Employees, a major offense may result in termination even as a first-time offense. (*Id.*; Doc. 24-9 at p. 3).

By letter dated April 13, 2021, CSXT informed Plaintiff that a formal investigation had been opened "to develop the facts and place your responsibility, if any, in connection with information … that on April 8, 2021, at approximately 2320 hours, while working … at or near Lagrange, you failed to protect your shove movement, resulting in a run through switch and passing a signal displaying a stop indication … ." (Doc. 24-6). The letter further informed Plaintiff that a hearing had been scheduled, that he was "being held out of service pending this investigation," and that his "FRA Conductor Certification is suspended … pending a revocation determination in connection with the incident described above." (*Id*.). A materially identical letter dated April 12, 2021 was sent to Green. (Doc. 24-5). CSXT subsequently sent Plaintiff a letter dated April 16, 2021 informing him that his post-incident substance testing had returned positive for marijuana/THC metabolites. (Doc. 24-7 at p. 2; *see also* Doc. 24-8). Green also was required to submit for post-incident substance testing; his results were negative. (Doc. 21-5 at p. 5, ¶ 14; Doc. 21-6 at p. 2, ¶ 7).

An investigative hearing into the incident was held on April 28, 2021 in front of Michael Bias in his capacity as CSXT's Manager of Train Operations in Fairburn, Georgia. (Doc. 24-12). Testimony at the hearing was given by Michael Ray, who had responded to the accident for CSXT and conducted an investigation into the accident for CSXT. (Doc. 21-5 at p. 5, ¶ 12; Doc. 24-12 at pp. 8-28, 46-47). Additional testimony was given by Plaintiff (Doc. 24-12 at pp. 28-37) and by Green (*Id*. at pp. 37-45). Both Plaintiff and Green had union representation at the hearing and were afforded the opportunity to present evidence, cross-examine witnesses, and make argument. (*Id*. at pp. 6, 47-49). By letter dated May 27, 2021, CSXT informed Plaintiff that "[a]s a result of the testimony and other evidence presented in this investigation, it has been determined that you violated CSX Transportation Rule(s) 1292, 504.21,

1285, 406.3" and that "[f]or your violation of the above-mentioned rule(s) and due to the serious nature of the infraction(s), you are dismissed in all capacities from the service of CSX Transportation effective immediately." (Doc. 24-16).[5]

The termination letter was signed on behalf of CSXT by A.G. Ferrera, who was CSXT's Atlanta Superintendent. (*Id*.; Doc. 21-6 at p. 1, ¶ 5). Although Plaintiff alleges that Ferrera was the decision-maker in connection with the termination of his employment (Doc. 24-23 at p. 7), the record reflects that the termination decision actually was made by CSXT General Manager Nicholas Male (Doc. 21-5 at p. 5, ¶ 13; Doc. 21-6 at p. 2, ¶ 6). The record further reflects that the decision was made in consultation with Macon Jones (Director of Labor Relations), Derek Harter (Montgomery Superintendent), and Eric Jagusch (Montgomery Assistant Superintendent). (Doc. 21-5 at p. 5, ¶ 13; Doc. 21-6 at p. 1, ¶ 5 & p. 4; Doc. 24-13; Doc. 24-14; Doc. 24-15). All such participating employees were Caucasian. (Doc. 21-5 at p. 5, ¶¶ 12-13; Doc. 21-6 at p. 1, ¶¶ 2, 4, 5).

Unlike with Plaintiff, Green was reinstated by CSXT with discipline of "time served." (Doc. 1 at p. 3, ¶ 11; Doc. 21-6 at p. 1, ¶ 6). The primary justification offered for the distinction was that "[t]he conductor is significantly more culpable because he failed to protect the shove" and "[t]he engineer's primary failure was not having a proper job briefing and not confirming the conductor was riding point despite his assumption to the contrary." (Doc. 21-6 at p. 1, ¶ 6; *see also* Doc. 21-6 at p. 4: "[T]he engineer is not as culpable as the conductor and any discipline

---

[5] Plaintiff admitted during the investigation that he initially was riding on the rear of the train to "protect the shove" but dismounted while the train was continuing along the track. (Doc. 24-3 at p. 2; Doc. 24-12 at pp. 29, 31, 46). Green stated he was unaware that Plaintiff had ceased "protecting the shove" (Doc. 24-3 at p. 1; Doc. 24-12 at pp. 27, 41, 46), and Plaintiff acknowledged that Green "may have thought that I was on the bottom the entire time" (Doc. 24-12 at p. 46). Regardless, there is no dispute that the train ran through a stop signal after Plaintiff disembarked. (Doc. 24-12 at pp. 29-30, 40-41; Doc. 24-23 at p. 12).

5

assessed should reflect that difference."; *see also* Doc. 24-15). As the decision-maker for CSXT, Male has denied any knowledge or consideration of Plaintiff's race at the time of termination. (Doc. 21-6 at p. 2, ¶ 8).

Plaintiff filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 5, 2021 and received a right-to-sue notification on or about November 22, 2021. (Doc. 1 at p. 1, ¶ 2; Doc. 1-1). On February 17, 2022, Plaintiff timely commenced this action to allege race discrimination under Title VII and § 1981. (Doc. 1). Plaintiff specifically contends that "race was a motivating factor in [CSXT's] decision to terminate his employment" and that "a convincing mosaic of circumstantial evidence exists showing that [CSXT] terminated [his] employment based on his race." (Doc. 1 at p. 4, ¶ 16 & p. 5, ¶ 20). CSXT in turn has moved for summary judgment, and the parties' respective positions have been fully briefed such that the arguments are ripe for determination. (Docs. 21, 24, 27).

**III.   Legal Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id*. Alternatively, a movant who does not have a

trial burden of production can simply assert that the nonmoving party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. … [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). Under either scenario, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists as to each element of the underlying claims. *See Celotex Corp.*, 477 U.S. at 324; Fed. R. Civ. P. 56(c)(1)(A). In determining whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a).

**IV.    Discussion**

The Complaint alleges two counts of race discrimination based on Title VII and § 1981, respectively. (Doc. 1 at pp. 4-5). "Both [Title VII and § 1981] have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). *See also Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985) ("Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under section[] 1981 …, the legal elements of the claims are identical."). The parties thus are in agreement that the court's analysis should begin with the familiar burden shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). (Doc. 21 at p. 15: Doc. 24 at pp. 13-15).

To establish a *prima facie* case of race discrimination, a plaintiff must establish that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) the employer treated similarly situated employees outside of the plaintiff's protected class more favorably; and (4) he was qualified to do the job. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802-04), *abrogated on other grounds by Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1226 (11th Cir. 2019) (*en banc*). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield*, 115 F.3d at 1562. Once a *prima facie* case has been presented, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged action. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets that burden, the plaintiff in turn must demonstrate that the articulated reason is a mere pretext for discrimination. *Holifield*, 115 F.3d 1565.

CSXT acknowledges that "[t]here is no dispute that Plaintiff, a Caucasian, is a member of a protected class, and that he was subjected to an adverse employment action when CSXT terminated his employment." (Doc. 21 at p. 16). However, CSXT argues that Plaintiff is "unable to carry his burden of establishing that CSXT treated any similarly situated employee not in his protected class more favorably" and that Plaintiff's proffered comparators "were not similarly situated to Plaintiff." (Doc. 21 at p. 17).

Generally, "to meet the comparability requirement a plaintiff is required to show that he is similarly situated in all relevant aspects to the non-minority employee." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001). A "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *United States v. Brantley*, 803 F.3d 1265, 1272 (11th Cir. 2015). The Eleventh Circuit has held

that "a valid comparator will turn not on formal labels, but rather on substantive likeness." *Lewis*, 918 F.3d at 1228. The substance of the "similarity" is "to be worked out on a case-by-case basis," and a similarly-situated comparator "will have engaged in the same basic conduct (or misconduct) as the plaintiff," "will have been subject to the same employment policy," "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor," and "will share the plaintiff's employment or disciplinary history." *Id.* at 1227-28.

Plaintiff primarily relies on Green to satisfy his burden of showing that a similarly-situated employee outside of his protect class was treated more favorably. (Doc. 24 at p. 17). Certainly there are similarities between the two, *e.g.*, both had been employed with CSXT for similar lengths of time, both had prior disciplinary actions short of termination, both admitted a faulty assumption as to the train's length, both were alleged to have contributed to the derailment by violating the same rules, and both received hearing notices that were effectively identical. Yet federal courts have expressed hesitancy to view engineers and conductors as appropriate comparators because they have distinct—albeit related—job duties in the railroad hierarchy. *See Thomas v. Norfolk S. Ry. Co., Inc.*, 2022 WL 907883, *17 (N.D. Ala. Mar. 28, 2022) ("But, again, a shared responsibility for safety does not change the fact that an engineer and a conductor have different responsibilities on the train."); *Player v. Kansas City So. Ry. Co.*, 2011 WL 5572920, *5 (W.D. La. Nov. 16, 2011) ("This court has previously determined that engineers and conductors are not comparable so as to satisfy *McDonnell Douglas*. … Each job has different responsibilities, and an engineer is a step above a conductor in KCS's hierarchy.") (citing *Cargo v. Kan. City S. Ry. Co.,* 2011 WL 1304741, *4 (W.D. La. 2011) ("A conductor is not comparable to an engineer."). CSXT's investigation indeed revealed that Plaintiff's culpability as conductor exceeded that of Green as engineer in that Plaintiff intentionally failed to "protect the shove" while Green had

no knowledge that Plaintiff abandoned his observation post at the leading edge of the train. (Doc. 21-6 at p. 4). It further is undisputed that only Plaintiff failed his post-incident substance testing. (Doc. 21-6 at p. 2, ¶ 7). Under such circumstances, Plaintiff and Green cannot be deemed "similarly situated." *See also Burley v. Nat'l Passenger Rail Corp.*, 33 F. Supp. 3d 61, 74 (D.D.C.), *aff'd*, 801 F.3d 290 (D.C. Cir. 2015) (finding engineer and conductor to not be similarly situated: "material differences in their conduct and responsibilities make them improper comparators").

Beyond Green, Plaintiff argues that "[CSXT] routinely gave preferential treatment to non-Caucasian employees compared to Caucasian employees." (Doc. 24 at p. 19). Plaintiff has offered the names of three other employees who he claims received more favorable treatment following rule violations. (Doc. 24-23 at p. 8). But none fit the "similarly situated" criteria. With respect to purported comparator A.J. Bailey, the record reflects that (unlike Plaintiff) he never worked as a conductor and never was found to have caused a derailment. (Doc. 21-5 at p. 6, ¶ 15; Doc. 24-19).[6] With respect to purported comparator E.D. Dawson, he was found to have violated wholly different rules than Plaintiff—not rules that required "protecting the shove" or obeying stop signals. (*Id*. at ¶ 16; Doc. 24-21). With respect to purported comparator Vernon Clark, he likewise was disciplined for conduct unrelated to stop signal violations or failing to "protect the shove" and did not contribute to a derailment. (Doc. 24-21). The record additionally reflects that none of the CSXT management who were involved in Plaintiff's termination had been involved in the earlier disciplinary decisions concerning the purported comparators. (*Id*. at ¶¶ 15-16). Accordingly, without a comparator who is similarly situated in all relevant aspects, Plaintiff has failed to demonstrate a *prima facie* claim under either Title VII or § 1981.

---

[6] CSXT asserts that Bailey "is a white male in the same protected class as Plaintiff." (Doc. 27 at p. 8). However, CSXT cites no evidence in the record for that point. (*Id*.). Plaintiff testified under oath that Bailey is African American. (Doc. 24-23 at p. 8).

Even assuming a *prima facie* case could be established, it is clear that CSXT has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment, *i.e.*, Plaintiff's heightened degree of culpability. *See McDonnell Douglas*, 411 U.S. at 802. Because a legitimate, nondiscriminatory reason has been set forth, it is incumbent upon Plaintiff to demonstrate that the reason was a mere pretext for discrimination. *Holifield*, 115 F.3d 1565. A plaintiff may do so by casting sufficient doubt as to permit a reasonable factfinder to determine that a discriminatory reason more likely than not motivated the employer's decision—demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). However, when the employer's "proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Plaintiff states that he was informed by CSXT in a letter dated April 19, 2021 that he was facing a formal investigation regarding "a reasonable cause collection test where results were confirmed positive for cannabinoids, and all circumstances relating thereto." (Doc. 24-8 at p. 1). Plaintiff asserts that any claimed justification for terminating his employment due to such results was pretextual because CSXT had expressed conditions he could satisfy in order to return to service but terminated his employment before he had sufficient opportunity to satisfy those conditions. (Doc. 24 at p. 20; Doc. 24-7). The notification letter regarding the results of Plaintiff's substance testing, however, pertained to a completely separate rule violation from the stop signal and "protecting the shove" issues. (*Cf.* Docs. 24-5, 24-6, and 24-8). Rather than the termination

decision having resulted from Plaintiff's positive substance test, internal emails among CSXT management confirm that it was Plaintiff's comparatively greater culpability in causing the derailment that served as the basis for his termination. (Doc. 24-14: opining that Plaintiff "is significantly more culpable because he failed to protect the shove while the engineer was complying with car counts given until the train passed the signal"). Although CSXT later concluded that the testing results independently would have supported termination (Doc. 24-17), such a conclusion does not render CSXT's original justification pretextual. The only reasonable conclusion from the record is that the termination decision was completely divorced from any consideration of race. In that regard, the ultimate decision-maker has provided sworn testimony that he was not even aware of Plaintiff's race, and nothing in the record suggests otherwise. (Doc. 21-6 at p. 2, ¶ 8).[7]

Plaintiff alternatively argues that even if he "did not meet his burden under the McDonnell Douglas framework, he has presented sufficient evidence to establish a convincing mosaic of discrimination to survive summary judgment." (Doc. 24 at p. 21). The Eleventh Circuit has described the "convincing mosaic" standard as follows:

---

[7] The undisputed evidence that Nicholas Male was the decision-maker and lacked knowledge of Plaintiff's race would be sufficient standing along to justify entry of summary judgment for CSXT. *See, e.g., Colvin v. Dejoy*, No. 2:19-cv-757-WKW-KFP, 2022 WL 17491323, *3 (M.D. Ala. Oct. 14, 2022) ("A person accused of discriminating against another because of race or sex must have known the other's race or sex.") *adopted by Colvin v. Dejoy*, 2022 WL 1789160 (M.D. Ala. Dec. 7, 2022) (citing *Lubetsky v. Applied Card Systems, Inc.*, 296 F.3d 1301, 1306 (11th Cir. 2002) ("In this case, Appellant failed to establish a *prima facie* case of intentional religious discrimination by Appellee because he did not present any evidence that the decision-maker knew of his religion.")). The Eleventh Circuit has recently affirmed that "'[w]hen evaluating a charge of employment discrimination' we 'focus on the actual knowledge and actions of the decisionmaker.'" *Ossmann v. Meredith Corp.*, 2023 WL 5809642, *4 (11th Cir. Sept. 8, 2023) (quoting *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002)).

> Aside from the *McDonnell Douglas* framework, an employee can still survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (internal quotation marks omitted). A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) "systematically better treatment of similarly situated employees," and (3) pretext. *Lewis II*, 934 F.3d at 1185.

*Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022).  Plaintiff asserts that "the mosaic of evidence includes the harsher discipline imposed on Mr. Rogers over Mr. Green for committing the same rule violations, statements that both Mr. Rogers and Mr. Green were responsible for the derailment, Mr. Rogers' prior discipline in 2014 that was deemed 'excessively harsh' by a reviewing board, CSX's preferential treatment of non-Caucasian employees when it relates to discipline, and CSX's shifting reason for terminating Mr. Rogers." (Doc. 24 at p. 21).

Again, there is no evidence in the record to suggest that any part of CSXT's decision to terminate Plaintiff's employment was motivated by race.  The ultimate decision-maker has disclaimed any knowledge or consideration of Plaintiff's race and has further testified that race would have made no difference in the outcome—which was based upon a finding of Plaintiff's materially greater culpability. (Doc. 21-6 at p. 2, ¶ 8).  Even though Plaintiff as conductor and Green as engineer were found to have violated the same safety rules and contributed to the same derailment, the undisputed evidence supports differing measures of discipline: they each possessed distinct responsibilities as to movement of the train; they each had distinct disciplinary histories;

and they each had distinct results from their post-incident substance testing. On such a record, there simply is no evidentiary support for finding a convincing mosaic of discrimination.[8]

## V.   Conclusion

To prove a case of race discrimination under either Title VII or § 1981, Plaintiff is required to establish that CSXT "intentionally discriminated" against him. *See Lubetsky*, 296 F.3d at 1305. No reasonable factfinder could reach that conclusion on the current record. It therefore is **ORDERED** that the motion for summary judgment (Doc. 21) filed by CSX Transportation Inc. is hereby **GRANTED**. A final judgment will be entered separately.

**DONE** this the 29th day of September 2023.

_____
CHAD W. BRYAN
UNITED STATES MAGISTRATE JUDGE

---

[8] The court notes that Plaintiff's own deposition testimony belies his argument of a convincing mosaic. Plaintiff testified that he had no reason to suspect that the involved CSXT managerial employees—including Nicholas Male as the ultimate decision-maker—discriminated against him on the basis of race. (Doc. 24-23 at pp. 9-10). Plaintiff's deposition testimony points all allegations of discrimination in the direction of A.G. Ferrera on the allegation that the Atlanta division had been involved in a course of disparate discipline. (*Id*. at pp. 7-8). Not only has the court found all of the purported comparators not to be similarly situated for reasons previously set forth, there is no evidence that Ferrera was involved in any of the disciplinary decisions. (*Id*. at pp. 8-9). Nor is there any evidence that Plaintiff's 2014 discipline was found to be "excessively harsh" on any basis motivated by race.